**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOCAL RECOVERY, LLC, a California limited liability company; ROGER LAWSON, | No. 20-55820 |
| *Plaintiffs-Appellants,* | D.C. No. 8:18-cv-01304-JVS-PJW |
| v. | |
| | OPINION |
| CITY OF COSTA MESA, a municipal corporation; DOES, 1-100, | |
| *Defendants-Appellees.* | |

| | |
|---|---|
| RAW RECOVERY, LLC, a California limited liability company, | No. 20-55870 |
| *Plaintiff-Appellant,* | D.C. No. 8:18-cv-01080-JVS-PJW |
| v. | |
| CITY OF COSTA MESA, | |
| *Defendant-Appellee.* | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted July 12, 2022
Pasadena, California

Filed January 3, 2023

Before:  Kim McLane Wardlaw and Mark J. Bennett,
Circuit Judges, and Gary S. Katzmann,[*] Judge.

Opinion by Judge Bennett

---

## SUMMARY[**]

---

### Disability / Housing

The panel reversed the district court's summary judgment in favor of the City of Costa Mesa in cases in which plaintiffs-appellants ("Appellants"), operators of sober living homes for persons recovering from drug and alcohol addiction, alleged that two new City ordinances and the City's enforcement practices discriminated against them on the basis of disability under the Fair Housing Act (FHA),

---

[*] The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the Americans with Disabilities Act (ADA), and the California Fair Employment and Housing Act (FEHA).

The ordinances, which made it unlawful to operate sober living homes without a permit, define sober living homes as group homes serving those who are "recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law," and define group homes as "facilit[ies] that [are] being used as a supportive living environment for persons who are considered handicapped under state or federal law." Until the ordinances were adopted, the City did not regulate sober living homes differently from other residences. The ordinances required all sober living homes, including established homes, to be located more than 650 feet away from any other sober living home or any state-licensed drug and alcohol treatment center. No existing homes were grandfathered—i.e., if two operating sober living homes were within 650 feet of each other, one would have to cease operating as a sober living home. The ordinances did not address the criteria used to determine which home could remain, but provided that applicants could request reasonable accommodations from permit conditions and requirements, like the 650-foot requirement.

Appellants submitted both permit applications and reasonable accommodation requests to the City so they could continue to operate their sober living homes, even those that were operating within 650 feet of other sober living homes or state-licensed drug and alcohol treatment centers. The City found that Appellants were operating sober living homes but denied some permits and reasonable accommodation requests because the homes were operating in violation of the new separation requirement. The City issued citations to Appellants for operating the sober living

homes without approval, and filed state court abatement actions against Appellants.

Granting the City's motions for summary judgment, the district court found that Appellants did not establish that residents in their sober living homes were actually disabled, or that the City regarded their residents as disabled.

The panel held that Appellants and other sober living home operators can satisfy the "actual disability" prong of the ADA, FHA, or FEHA *on a collective basis* by demonstrating that they serve or intend to serve individuals with actual disabilities; they need not provide individualized evidence of the actual disability of their residents. Rather, they can meet their burden by proffering admissible evidence that they have policies and procedures to ensure that they serve or will serve those with actual disabilities and that they adhere or will adhere to such policies and procedures. The panel held that in each action, the district court therefore erred by finding that an individualized assessment of resident disability was necessary under the "actually disabled" prong of the disability definition.

The panel held that in determining whether Appellants can establish disability under the "regarded as disabled" prong of the disability definition, the district court erred by finding that Appellants must prove the City's "subjective belief" that their residents were disabled. The panel explained that under this prong, the analysis turns on how an individual is perceived by others.

The panel noted that Appellants provided the district court with evidence of (1) admissions criteria and house rules, (2) employee and former resident testimony, (3) public fears and stereotypes of their residents that may have influenced the City's perception, and (4) the actual content

of City ordinances, denial letters, resolutions, citations, and abatement actions that acknowledged the residents in Appellants' homes were disabled. The panel wrote that this type of evidence, if it satisfied the requirements of Federal Rule of Civil Procedure 56(c), should have been considered by the district court in evaluating whether Appellants established triable issues of fact under either or both of the "actually disabled" or "regarded as disabled" prongs. The panel therefore reversed each of the district court's grants of summary judgment and remanded for the court to consider whether the record contains evidence sufficient to establish a genuine dispute of material fact on the "actually disabled" or "regarded as disabled" prongs of the disability definition.

## COUNSEL

Christopher Brancart (argued) and Elizabeth Brancart, Brancart & Brancart, Pescadero, California; Steven G. Polin, Law Offices of Steven G. Polin, Washington, D.C.; Garrett Prybylo, Seyfnia & Prybylo LLP, Los Angeles, California; Isaac Zyfaty, Much Shelist PC, Newport Beach, California; for Plaintiffs-Appellants.

Mary-Christine Sungaila (argued) and Efrat M. Cogan, Buchalter APC, Irvine, California; Seymour B. Everett, Samantha E. Dorey, and Christopher D. Lee, Everett Dorey LLP, Irvine, California; Kimberly Hall Barlow and James Touchstone, Jones & Mayer, Fullerton, California; for Defendants-Appellees.

Brant S. Levine (argued) and Nicolas Y. Riley, Attorneys; Pamela S. Karlan, Principal Deputy Assistant Attorney General; Kristen Clarke, Assistant Attorney General United

States Department of Justice, Civil Rights Division, Appellate Section, Washington, D.C.; Heather Nodler and Shira E. Gordon, Trial Attorneys; Jeanine Worden, Associate General Counsel for Fair Housing; Sasha Samberg-Champion, Deputy General Counsel for Enforcement and Fair Housing; Damon Smith, General Counsel; Department of Housing and Urban Development, Office of General Counsel, Office of Fair Housing, Washington, D.C.; for Amicus Curiae United States of America.

## OPINION

BENNETT, Circuit Judge:

In 2014, the City of Costa Mesa ("City") began amending its zoning code to reduce the number and concentration of sober living homes in its residential neighborhoods. Two of its new ordinances—Ordinances 14-13 and 15-11 ("Ordinances")—made it unlawful to operate sober living homes without a permit. The Ordinances define sober living homes as group homes serving those who are "recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law," and define group homes as "facilit[ies] that [are] being used as a supportive living environment for persons who are considered handicapped under state or federal law." Costa Mesa, Cal., Mun. Code § 13-6. Unlike addiction treatment facilities, sober living homes do not require a license from the state of California. Until the Ordinances were adopted, the City did not regulate sober living homes differently from other residences.

The Ordinances required all sober living homes, including established homes, to be located more than 650 feet away from any other sober living home or any state-licensed drug and alcohol treatment center. No existing homes were grandfathered under the Ordinances—i.e., if two operating sober living homes were within 650 feet of each other, one would have to cease operating as a sober living home. The Ordinances did not address the criteria used to determine which home could remain. They provided, however, that applicants could request reasonable accommodations from permit conditions and requirements, like the 650-foot requirement.

Plaintiffs-Appellants SoCal Recovery, LLC ("SoCal") and RAW Recovery, LLC ("RAW") (together, "Appellants") operate sober living homes in Costa Mesa, California, for persons recovering from drug and alcohol addiction. Appellants submitted both permit applications and reasonable accommodation requests to the City so they could continue to operate their sober living homes, even those that were operating within 650 feet of other sober living homes or state-licensed drug and alcohol treatment centers.[1] The City found that Appellants were operating sober living homes but denied some permits and reasonable accommodation requests because the homes were operating in violation of the new separation requirement.[2] The City issued citations to Appellants for operating the sober living homes without approval. The City also filed state court

---

[1] Four sober living homes at issue in this appeal were opened or acquired after 2014, but before the applicable Ordinances went into effect.

[2] Two other reasonable accommodation requests were denied because they were not submitted in writing, as required by the Ordinances.

abatement actions against Appellants.

Appellants sued the City, arguing that the Ordinances and the City's enforcement practices discriminated against them on the basis of disability under the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12900 et seq.[3]  The City moved for summary judgment against Appellants.  The district court granted the City's motions, finding that Appellants did not establish that residents in their sober living homes were actually disabled,[4] or that the City regarded their residents as disabled.[5]

---

[3] Appellants withdrew other claims they brought under 42 U.S.C. §§ 1985–1986 and California Government Code §§ 11135, 65008. Appellants also brought a retaliation claim under the FHA and a claim under 42 U.S.C. § 1983.  The district court granted summary judgment to the City on both.  The district court awarded the City attorneys' fees on all these claims, which it found "were asserted in a frivolous fashion." Using a rough estimate, the district court found 10% of the City's total requested fees were related to the frivolous claims and awarded the City $21,935.84 in fees in RAW's case and $20,923.01 in fees in SoCal's case.

[4] The district court held that Appellants must prove their "clients have a substantial impairment to a major life activity, on a case-by-case basis." *SoCal Recovery, LLC v. City of Costa Mesa et al.*, No. SACV 18-1304, 2020 WL 2528002, at *5 (C.D. Cal. Apr. 10, 2020), *reconsideration denied*, No. SACV 18-1304, 2020 WL 4668145 (C.D. Cal. July 20, 2020).

[5] We grant RAW's motion to take judicial notice of the City Council resolution upholding the denial of the Knox Street home and the state court judgment and order in the City's abatement action against that home.  We deny as unnecessary Appellants' motions to take judicial notice of City Council and Planning Commission resolutions that are already in the record.

Because the district court erred by requiring Appellants to adduce individualized evidence of actual disability and failing to consider evidence that the City regarded the residents of the sober living homes as disabled, we reverse the district court's grant of summary judgment in both cases.

## I. BACKGROUND

### A. Sober Living Home Zoning Regulations

Through its 2014 and 2015 Ordinances, the City imposed new zoning regulations regarding group housing for persons with disabilities. Before the Ordinances, about 94 unlicensed sober living homes were legally operating in residential zones. Appellants argue that between 2014 and 2017, 73 sober living homes had closed.[6] The City's website indicates that there are 16 approved sober living homes today.[7] The City adopted the 650-foot separation restriction and other restrictions in an explicit effort to reduce the number of sober living homes operating within the City. The City was concerned about the "overconcentration" of sober living homes in some neighborhoods, which the City

---

[6] The source in the record cited by Appellants lists 68 closures, assuming each entry is a different property.

[7] *See City Approved Sober Living/Group Homes*, https://app.smartsheet.com/b/publish?EQBCT=f6f1941be3624556ab1b03e829df4639 (last visited Aug. 31, 2022); *see also Group Homes/Sober Living Information and Application*, Costa Mesa, https://www.costamesaca.gov/city-hall/city-departments/development-services/community-improvement-division/group-homes-sober-living-information (last visited Aug. 31, 2022) (providing information on "City approved sober living/group homes," "Operators that have closed," and "Group homes cited").

believed was "deleterious" to those neighborhoods' residential character.

The 2014 Ordinance, Ordinance 14-13, regulates group housing for persons with disabilities in single-family districts. Costa Mesa Mun. Code §§ 13-310–312. It defined "[s]ober living home" as: "a group home for persons who are recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law." *Id.* § 13-6. "Group home[s]," in turn, are defined as "facilit[ies] that [are] being used as a supportive living environment for persons who are considered handicapped under state or federal law." *Id.*

Ordinance 14-13 made it unlawful to operate a sober living home in a single-family district without obtaining a special use permit. *Id.* § 13-311. Group homes in single-family districts were limited to six occupants and needed to have a "house manager" residing in the home and present on a 24-hour basis. *Id.* § 13-311(a)(2), (a)(4).

In addition to the group home requirements, sober living homes needed to meet certain additional conditions. Relevant here, a sober living home could not be "located within six hundred fifty (650) feet, as measured from the closest property lines, of any other sober living home or a state licensed alcoholism or drug abuse recovery or treatment facility" ("separation requirement"). *Id.* § 13-311(a)(14)(i)**.[8]**   An applicant could seek relief from the

---

**[8]** Other requirements include that all occupants other than the house manager are "actively participating in legitimate recovery programs." § 13-311(a)(14)(ii). Additionally, "[t]he sober living home's rules and regulations must prohibit the use of any alcohol or any non-prescription drugs at the sober living home or by any recovering addict either on or off site." § 13-311(a)(14)(iii).

"strict application" of the permit requirements by requesting a reasonable accommodation. *Id.* § 13-311(a)(15).[9]

The 2015 Ordinance, Ordinance 15-11, applied similar zoning regulations as Ordinance 14-13 but to multi-family residential districts. *Id.* §§ 13-322 to 324. The same conditions for a special use permit under Ordinance 14-13 applied to existing group homes with six or fewer residents, including the 650-foot separation requirement for sober

---

[9] Permit applications are first submitted to the Director of Economic and Development Services ("Development Director"), who may make an initial determination, or designate another official to do so. Costa Mesa, Cal., Mun. Code §§ 13-311, 322; *see id.* § 13-6 (defining "director" as "[t]he director of [economic and] development services of the City of Costa Mesa, or his or her designee"). In this case, the Development Director designated the City's Zoning Administrator to make an initial decision regarding a subset of sober home applications. An unfavorable decision by the Development Director or Zoning Administrator is appealable to the City Planning Commission and then to the City Council. *Id.* §§ 13-8 to -11. The application shall include, inter alia, a copy of the group home rules and regulations, the relapse policy, and "[a]n affirmation by the owner/operator that only residents (other than the house manager) who are handicapped as defined by state and federal law shall reside at the group home." *Id.* § 13-311(a)(1)(viii).

Reasonable accommodation requests must be filed in writing with the Planning Division. *Id.* § 13-200.62(a)–(b). Applicants shall state "[t]he basis for the claim that the individuals are considered disabled under state or federal law, and why the accommodation is necessary to provide equal opportunity for housing and to make the specific housing available to the individuals." *Id.* § 13-200.62(b)(2). And the application shall include documentation that the applicant is "an individual with a disability," "applying on behalf of one or more individuals with a disability," or "a developer or provider of housing for one or more individuals with a disability." *Id.* § 13-200.62(b)(4). The Development Director's decision on the request for reasonable accommodation can be appealed to the Planning Commission, and then the City Council. *Id.* §§ 13-7, -8, -10(i)(2)(c), -11(b).

12     SOCAL RECOVERY, LLC V. CITY OF COSTA MESA

living homes. *Id.* §§ 13-322, -324(a). Existing group homes and sober living homes with seven or more residents needed to obtain a conditional use permit within one year, and to apply for an operator's permit within 120 days. *Id.* §§ 13-323, -324(b). A 650-foot separation requirement also applied to sober living homes with seven or more residents. *Id.* § 13-323(b). As with Ordinance 14-13, under Ordinance 15-11, a group home could seek relief from the "strict application" of the permit requirements by submitting a request for reasonable accommodation exempting it from a requirement. *Id.* §§ 13-322(c), -200.62. Permit applications would be reviewed by the Development Director and could be appealed to the Planning Commission and City Council. *Id.* §§ 13-7 to -11.

All permitting requirements in the Ordinances applied to both existing sober living homes and proposed sober living homes. Since the Ordinances passed, the City has received fifty-two reasonable accommodation requests from group homes and has granted three, none to Appellants.

**B. SoCal Recovery, LLC**

SoCal operates three sober living homes relevant to this appeal. Two of the homes, located on Hudson Avenue and Cecil Place, both opened before November 2014, are in single-family districts, and provide housing to six or fewer residents in recovery. One property, on East 21st Street, is in a multi-family residential district, providing housing for up to thirty-two residents in recovery. The East 21st Street home opened prior to December 2015, before the multi-family residential district Ordinance took effect. Each of the homes is within 650 feet of another facility covered by the Ordinances.

SoCal submitted permit applications for all three homes and applied for a reasonable accommodation from the 650-foot requirement for the 21st Street property. The City's Development Director denied the reasonable accommodation request, citing the 650-foot separation requirement and concerns about the overconcentration of sober living residences in the area. At a 2016 public hearing, SoCal verbally requested reasonable accommodations for the Hudson Avenue and Cecil Place homes. The Zoning Administrator denied the permit applications because the houses violated the 650-foot separation requirement and denied the reasonable accommodation requests because they were not made in writing.

SoCal appealed. The Planning Commission upheld the denial of the reasonable accommodation request and permit application for the 21st Street property. The Planning Commission upheld the denials of the permit applications for the Hudson Avenue and Cecil Place homes without discussing the reasonable accommodations requests.[10] The City Council adopted resolutions upholding the decisions of the Planning Commission, finding that each of the homes violated the separation requirement. The City Council "determined that a separation requirement for such facilities will still allow for a reasonable market for the purchase and operation of sober living homes within the City and still result in preferential treatment for sober living homes."

Like the Planning Commission, the City Council denied the reasonable accommodation request for the 21st Street

---

[10] SoCal did not appeal the reasonable accommodation denial for the Hudson Avenue and Cecil Place homes to the City Council.

home, finding that waiver of the 650-foot separation requirement was "not necessary to allow one or more individuals who are recovering from drug and alcohol abuse to enjoy the use of <u>a</u> dwelling within the City" even if, "[i]n theory, [waiving the requirement] would allow [them] to enjoy the use of <u>these</u> dwellings."

The City then issued notices of violation to all three homes, informing SoCal that they were operating unlicensed homes in violation of the Zoning Code and ordering them to cease operations within sixty days. The City also brought an abatement action in state court, targeting one of the homes.

SoCal then brought this suit. SoCal alleged that its sober living homes were illegally "subject to the discriminatory limitation" in the zoning code—the "separation requirement limiting the number of Sober Living Homes that may exist" in the residential zones.[11]

During discovery, the City requested from SoCal documents related to the "disability" status of every one of its clients. The records the City requested included "all medical records from all health care providers which provided any of [SoCal's] clients any treatment [starting from] January 1, 2014," "all documents that relate to clients' medical and health information and histories, and information and histories regarding clients' drug use," and records of all drug tests performed at the facilities. SoCal refused to produce those documents, or to have any of its employees testify about them, asserting that they were

---

[11] SoCal also filed a motion for a preliminary injunction, which the district court denied. We previously affirmed the district court's decision.

privileged under HIPAA.**[12]**   The City moved for summary
judgment, arguing that without individualized evidence,
SoCal's statutory disability discrimination claims failed
because SoCal had not demonstrated a genuine dispute of
material fact as to whether any of its residents were
"disabled" under the ADA and FEHA, or "handicapped"
under the FHA.

On summary judgment, two relevant issues were
whether Appellants' residents had an actual disability or
were regarded as disabled by the City.  First, SoCal argued
that a triable issue of fact existed as to whether any of its
residents had an "actual disability" based on evidence about
its admissions policies, rules, and daily operations, as well
as deposition testimony from SoCal staff.  To argue that their
residents were regarded as disabled by the City, SoCal also
cited assertions by the City, including in the language of the
Ordinances, the City's administrative rulings on the sober
living homes' zoning requests, and the state court abatement
action.

Second, SoCal argued that a disputed factual issue
existed as to whether the City regarded its residents as
disabled, pointing to the City's statements throughout the
permit application and reasonable accommodation process,
as well as the residents' testimony to the City Council.
SoCal cited the City's admission that SoCal "made a
showing that the [reasonable accommodation] application is
on behalf of disabled individuals in recovery from drug and
alcohol substance abuse."  Thus, under the definitions in the
Ordinances, SoCal stated that it was "required to prove that

---

**[12]** The City did not seek to compel production of the medical records
SoCal refused to produce.

it was making a reasonable accommodation request on behalf of disabled individuals." SoCal argued that the Ordinances classified "a disabled household . . . as a Sober Living Home" and then subjected it to "discriminatory limitation[s] . . . that are not imposed on other groups of unrelated non-disabled persons or other groups of disabled persons."

### C. RAW Recovery, LLC

RAW provides "housing to disabled individuals in recovery from drug and alcohol abuse." Before the 2015 Ordinance went into effect, RAW provided sober living at three homes in multi-family zoning districts in Costa Mesa. Two were on adjacent parcels on Jeffrey Drive and one was on Knox Street.

Pursuant to Ordinance 15-11, RAW submitted timely conditional use permit applications and reasonable accommodation requests for the three homes. In its reasonable accommodation requests, RAW sought "waiver of the spacing requirements," so that its contiguous locations on Jeffrey Drive could remain open and its Knox Street home could be treated as a "single housekeeping unit" and thereby be exempted from the Ordinances' requirements for group homes.[13] RAW's applications and requests were

---

[13] The Ordinances specifically exempt "any group home that operates as a single housekeeping unit" from regulations concerning group homes. Costa Mesa, Cal., Mun. Code § 13-6. Designation as a single housekeeping unit "means that the occupants of a dwelling unit have established ties and familiarity with each other, jointly use common areas, interact with each other, share meals, household activities, and expenses and responsibilities; membership in the single housekeeping unit is fairly stable as opposed to transient, members have some control

denied; the contiguous Jeffrey Drive homes were denied at each stage of the process, whereas the Knox Street home's application denial was more complicated.[14]

RAW joined a federal court action seeking monetary, declaratory, and injunctive relief for zoning discrimination

---

over who becomes a member of the household, and the residential activities of the household are conducted on a nonprofit basis." *Id.* Such designation exempts a dwelling from, inter alia, the 650-foot requirement. *See id.* § 13-311.

Notably, the City Council provided in the 2014 Ordinance that "sober living homes do not function as a single-family unit nor do they fit the City's zoning definition of a single-family for the following reasons: (1) they house extremely transient populations . . .; (2) the residents generally have no established ties to each other . . .; (3) neighbors generally do not know who or who does not reside in the home; (4) the residents have little to no say about who lives or doesn't live in the home," among others.

RAW did not specifically argue that its Knox Street home met the definition of a "single housekeeping unit," but did state in its reasonable accommodation application that "residents of RAW are not 'transient' by nature and function and interact with each other much in the same way as 'the functional equivalent of a traditional family.'"

[14] RAW's Knox Street conditional use permit application, was initially denied by the Development Director, then approved by the Planning Commission on appeal. Two City Councilmembers called for review because they believed the home was within 650 feet of a state-licensed facility. Though a City attorney advised that Ordinance 15-11 "would not permit the City Council to take into consideration state licensed homes that had not applied for use permits, as a basis for finding a 650 foot separation conflict," the City Council reviewed the application, overturned the Planning Commission, and revoked the permit. The City Council cited maintenance and secondary concerns of smoking and noise. The City Council passed a resolution reflecting the revocation of the permit, citing the separation requirement.

on the basis of disability.**15**  RAW primarily argued that the City's "draconian permitting requirements" for group homes and sober living homes "are discriminatory on [their] face, and as applied to Plaintiffs, as well as other applicants similarly situated."  RAW asserted that "Ordinance 15-11, which requires that all group homes be at least 650 feet apart," is a "tool[] the City uses to enforce its policy of discrimination" against people in recovery.

The City moved for summary judgment, arguing that "Plaintiffs' discrimination claims fail because Plaintiffs cannot meet their burden to prove that they are associated with individuals that qualify as disabled."  The City alleged that RAW "must prove on a case-by-case basis" that all its residents are disabled or regarded as disabled and are no longer using illegal drugs.**16**  Because RAW did not do so, the City argued, "all of [its] claims fail."  RAW argued that it could prove the disability of its residents through the City's admissions and witness testimony.  It argued that "[t]here should be no doubt that [RAW's] patients are statutorily handicapped" given they are recovering from drug and/or alcohol addiction and they must be sober to live in RAW's homes.  RAW also argued that "[t]here is no question that the City of Costa Mesa regarded the individuals residing in

---

**15** Northbound Treatment Services, which is no longer a party to this case, filed the initial complaint, and added RAW as a plaintiff in its first amended complaint.

**16** As with SoCal, the City requested "all medical records from all health care providers which provided any of [RAW's] clients any treatment at any time [starting from January 1, 2014] to present," as well as "all documents that relate to clients' medical and mental health information and histories, and information and histories regarding clients' drug use." RAW refused to produce the records, and the City never sought to compel their production.

[RAW's] group homes and sober living homes as disabled" because "[i]t is memorialized in every step of the use permit application process and reasonable accommodation requests." RAW argued that the City's permit and reasonable accommodation processes required RAW "to put forward proof of the disability of the residents," stating that the "City in processing the applications has admitted and accepted that Plaintiffs provided housing to a class of disabled persons." Finally, RAW argued that the City regarded their residents as disabled because of City resident testimony at the City Council hearing indicating "fear of the influx of felons coming into the neighborhood, and the violence and damage" they would bring.

## D. District Court Proceedings

The district court issued substantively similar rulings in each case, granting summary judgment to the City on Appellants' ADA, FHA, and FEHA claims because Appellants had failed to create a genuine dispute of material fact as to whether their clients have a "handicap" or "disability" under the statutory definition. *SoCal*, 2020 WL 2528002, at *4–6; *Nat'l Therapeutic Servs., Inc. v. City of Costa Mesa*, No. SACV 18-1080, 2020 WL 5005550, at *6 (C.D. Cal. July 17, 2020). Under the FHA and the ADA, "disability" is defined as "(1) a physical or mental impairment which substantially limits one or more . . . major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); *see also id.* § 12102(1). Though the FHA uses the word "handicap" instead of "disability," "handicap" is defined using the same three alternative definitional prongs as "disability" under the ADA. Thus, the words "handicap" and "disability" are construed to have the same meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

FEHA defines "mental disability" and "physical disability" more specifically and incorporates the ADA's definition of disability if it provides "broader protection or coverage." *See* Cal. Gov't Code § 12926(j), (m), (n). Federal courts analyze FEHA claims under the same standard as FHA claims. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1156 n.14 (9th Cir. 2013).

On the "actual disability" prong of the disability definition, the district court concluded in each case that Appellants were required to provide individualized evidence that "their clients," *Nat'l Therapeutic Servs.*, 2020 WL 5005550, at *6, "have a physical or mental impairment that substantially limits one or more major life activities." *SoCal*, 2020 WL 2528002, at *5. In each case, the court agreed with the City that there is no "per se rule that all individuals in a drug rehabilitation program qualify as disabled or protected." *Id.* at *4; *see also Nat'l Therapeutic Servs.*, 2020 WL 5005550, at *4. According to the district court in *SoCal*, "[t]hat [Appellants] require[] sobriety for [their] residents does not change that [they] must prove [their] clients have a substantial impairment to a major life activity, on a case-by-case basis." *SoCal*, 2020 WL 2528002, at *5.

In both actions, the district court held that Appellants did not meet the "record of disability" prong of the definition because they did not produce their residents' medical records and asserted privilege when the City requested those records during discovery.[17] *Id.* at *5; *Nat'l Therapeutic Servs.*, 2020

---

[17] Appellants did not rely on this prong below to establish that their clients were disabled.

WL 5005550, at *5. As to the "regarded as" prong of the definition, the court's only proffered reason for granting summary judgment was that Appellants' evidence was "either inadmissible, mischaracterize[d] what the City required from [Appellants] in the application process, and/or [did] not establish the City's subjective belief of the clients' impairments."**[18]** *Nat'l Therapeutic Servs.*, 2020 WL 5005550, at *5; *see also SoCal*, 2020 WL 2528002, at *6.

Appellants timely appealed the grants of summary judgment.**[19]**

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 922 (9th Cir. 2004).

---

**[18]** The district court did not discuss in either case which evidence was inadmissible or why any of the evidence was inadmissible. And it did not discuss how Appellants had mischaracterized what the City had required of Appellants in the application process.

**[19]** SoCal filed a motion for partial reconsideration asking the court to reconsider its holding that SoCal had failed to create a material dispute of fact as to whether the City "regarded" its residents as disabled. *SoCal*, 2020 WL 4668145, at *1–2. The court denied that motion, reiterating that the evidence SoCal presented "did not establish a triable issue of fact as to whether the City regarded Plaintiff's *specific clients* as disabled." *Id.* at *2.

## III. DISCUSSION

Appellants argue that the district court applied the wrong legal standard on the questions of what evidence is required to establish actual or perceived disability. They contend that they should not have been required to provide individualized evidence of their clients' disabilities. Appellants also argue that a genuine dispute of material fact exists as to whether their residents are "regarded as" disabled by the City. We agree that the district court applied incorrect legal standards and did not properly consider the summary judgment evidence Appellants presented. We therefore reverse the district court's grants of summary judgment on the FHA, ADA, and FEHA claims.

### A. Statutory Background

Under the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling" because of a handicap of that person, a resident or intended resident, or any person associated with that person. 42 U.S.C. § 3604(f)(2). The statute gives any "aggrieved person" the right to sue, and broadly defines an "aggrieved person" as anyone who "claims to have been injured by a discriminatory housing practice." *Id.* §§ 3602(i)(1), 3613.

FEHA makes it unlawful "[t]o discriminate [because of disability] through public or private land use practices, decisions, and authorizations." Cal. Gov't Code § 12955(*l*). Any "aggrieved person" can sue. *Id.* § 12989.1. An "aggrieved person" is "any person who claims to have been injured by a discriminatory housing practice or believes that the person will be injured by a discriminatory housing practice that is about to occur." *Id.* § 12927(g). The FHA and FEHA invalidate any state or local law that "purports to

require or permit" an action that would be a discriminatory housing practice. 42 U.S.C. § 3615; Cal. Gov't Code § 12955.6.

Title II of the ADA makes it unlawful for a public entity to discriminate through its zoning laws against (1) a person with a "disability," 42 U.S.C. § 12132, or (2) a person who has a "relationship or association" with a person with a "disability," 28 C.F.R. § 35.130(g). The ADA gives "any person alleging discrimination" under the provision the right to sue. 42 U.S.C. § 12133; *see also Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 827 (9th Cir. 2009).

"Disability" in the ADA (and therefore FEHA) and "handicap" in the FHA are defined as: (1) a "physical or mental impairment which substantially limits one or more of [a] person's major life activities," (2) "a record of having such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. §§ 3602(h), 12102(1).[20] The first definition is often referred to as the "actual disability" prong, and the third as the "regarded as" prong.

### B. Actual Disability

To establish a disability under the "actual disability" prong of the ADA, FHA, or FEHA, a plaintiff must show "a physical or mental impairment" that "substantially limits" their ability to engage in one or more "major life activities." 42 U.S.C. §§ 3602(h), 12102(1); *Pac. Shores Props.*, 730 F.3d at 1156 n.14 (applying FHA standards to FEHA claims). Alcoholism and drug addiction are "impairments"

---

[20] Recall that although FEHA defines "mental disability" and "physical disability" more specifically than the ADA, it incorporates the ADA's definition of "disability" if the ADA would provide broader protection. *See* Cal. Gov't Code § 12926(n).

under the FHA, 24 C.F.R. § 100.201(a)(2), and the ADA, 28 C.F.R. § 35.108(b)(2). *See also Pac. Shores Props.*, 730 F.3d at 1156 ("It is well established that persons recovering from drug and/or alcohol addiction are disabled under the FHA and therefore protected from housing discrimination."). The impairment cannot include "current, illegal use of or addiction to a controlled substance." 42 U.S.C. § 3602(h); *see also id.* § 12114(a).

The district court concluded in both actions that Appellants could not establish that *any* of their residents had an "actual disability" because the evidence they adduced, including testimony about the admissions policies, house rules, and general day-to-day operations of their homes, was not sufficiently "individualized" under *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*. 534 U.S. 184, 199 (2002), *superseded on other grounds by* the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553; *see Nat'l Therapeutic Servs.*, 2020 WL 5005550, at *5; *SoCal*, 2020 WL 2528002, at *5. In *Toyota*, the Supreme Court held that "the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." 534 U.S. at 198 (cleaned up). Thus, a plaintiff must prove the relevant person's disability status in a "case-by-case manner." *Id.*

Appellants contend that an "individualized assessment" of every resident's disability status was unnecessary for their zoning discrimination claims to survive summary judgment or prevail at trial. We agree. At the outset, Appellants had standing to sue. Appellants are not disabled or handicapped, but they stated a claim under the FHA because they claimed they were "'aggrieved' by housing discrimination against

the disabled." *Pac. Shores Props.*, 730 F.3d at 1157 n.16.[21] They stated a claim under the ADA because they were "alleging discrimination on the basis of disability." *Id.* at 1157 n.17 (parenthetically quoting 42 U.S.C. § 12133).[22] They stated a claim under FEHA because they claim to "have been injured by a discriminatory housing practice." Cal. Gov't Code §§ 12927(g), 12989.1(a).[23]

The separation requirement prevented Appellants from conducting their normal business operations. Thus, they

---

[21] "The sole requirement for standing to sue under the FHA is the Article III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and palpable injury." *Walker v. City of Lakewood*, 272 F.3d 1114, 1123 (9th Cir. 2001) (cleaned up and citation omitted). For purposes of "the FHA. . . a plaintiff need not be among the class discriminated against in order to have standing. In particular, an organization may have standing to bring suit on its own behalf, without relying in a representative capacity on the standing of any third parties." *El Dorado Ests. v. City of Fillmore*, 765 F.3d 1118, 1121 (9th Cir. 2014) (citation omitted).

[22] An organization has standing to sue under the ADA on its own behalf by establishing an "injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular conduct in question." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (brackets omitted) (quoting *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004)). Thus, a plaintiff that "has presented evidence that it was denied a zoning permit because it cares for and/or associates with individuals who have disabilities . . . has standing to bring . . . suit on its own behalf." *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002).

[23] Both this court and California courts assess FEHA standing under FHA standards. *See, e.g.*, *Sisemore v. Master Fin., Inc.*, 151 Cal. App. 4th 1386, 1424–26 (2007) (applying FHA standing analysis to FEHA claims); *Walker*, 272 F.3d at 1124–25 (Plaintiff had standing under FEHA because it had standing under the FHA).

were aggrieved by the zoning policies. That every resident may not have been disabled does not mean Appellants were not aggrieved by discrimination against the disabled. Appellants should not have been required to prove the actual disability of their residents, in "a case-by-case manner," to meet the actual disability prong for their sober living homes. *Toyota Motor Mfg.*, 534 U.S. at 198.

Appellants' sober living homes and other dwellings intended for occupancy by persons recovering from alcoholism and drug addiction are protected from illegal discrimination against the disabled without the need for Appellants to present individualized evidence of the "actual disability" of their residents. The district court therefore applied the incorrect legal standard in both actions when it concluded that Appellants could not establish "actual disability" because they failed to present evidence of their residents' disability status.

The panel finds persuasive the United States' amicus brief, which argues that sober living homes need not provide individualized evidence of their residents' disabilities to establish a cause of action for disability discrimination under the FHA or the ADA. Under the FHA, as the United States argued, state and local governments are prohibited from discriminating *on the basis of disability* through zoning and land use practices. *See Pac. Shores Props.*, 730 F.3d at 1157. In discussing amendments to the FHA, the House Judiciary Committee explained that the FHA ban "is intended to prohibit the application of special requirements through . . . conditional or special use permits that have the effect of limiting the ability of [people with disabilities] to live in the residence of their choice in the community." H.R. Rep. No. 100-711, at 24 (1988). And Title II of the ADA prohibits local governments from enacting zoning laws that

discriminate based on disability. *See Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 732 (9th Cir. 1999).[24]

We now hold that Appellants and other sober living home operators can satisfy the "actual disability" prong *on a collective basis* by demonstrating that they serve or intend to serve individuals with actual disabilities. As discussed above, Appellants need not provide individualized evidence of the "actual disability" of their residents. Rather, they can meet their burden by proffering admissible evidence that they have policies and procedures to ensure that they serve or will serve those with actual disabilities and that they adhere or will adhere to such policies and procedures. We have held that plaintiffs may establish an actual disability through non-medical evidence. *See Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 858–59 (9th Cir. 2009) ("At the summary judgment stage, 'precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity. . . . Rather, . . . a plaintiff's testimony may suffice to establish a genuine issue of material fact.'" (alterations in original) (citation omitted)).[25] Indeed, the City conceded at oral argument that

---

[24] As the United States aptly pointed out, the City's argument, taken to its logical conclusion, would preclude the owner or operator of *any* proposed facility from surviving summary judgment. By definition, a *proposed* facility has no residents. So no matter how egregious the zoning discrimination, under the City's standard requiring individualized proof of disability, no suit by the owner or operator of a proposed home for people with disabilities would survive summary judgment.

[25] When a plaintiff is an organization that serves the disabled, rather than a person who is disabled, there is no reason similar evidence should not suffice, at least at the summary judgment stage.

new homes could satisfy the actual disability standard using this type of evidence, i.e., evidence of policies and procedures that the group home has a zero-tolerance policy, produced through declarations of individuals related to the group home. Oral Arg. at 29:45–30:30. There is no reason to hold existing homes to a higher standard.

Thus, Appellants can prove the "actual disability" of their current residents and any residents they seek to serve in the future through admissions criteria and house rules, testimony by employees and current residents, and testimony by former residents.**[26]** Because the district court applied an incorrect standard, it failed to consider evidence in the record that might support a finding that Appellants served or intended to serve individuals with "actual disabilities."

First, Appellants could show their residents were "actually disabled" and their future residents would be "actually disabled" using admissions criteria and house rules. We have stated that "[p]articipation in a supervised drug rehabilitation program, coupled with non-use, meets the definition of handicapped," under the FHA. *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994) (citing 42 U.S.C. § 3602(h) and *United States v. S. Mgmt. Corp.*, 955 F.2d 914, 922 (4th Cir. 1992)). Other circuits have reached the same conclusion. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown* ("*RECAP*"), 294 F.3d 35, 47–48 (2d Cir. 2002) (holding that a group home's admissions policies demonstrated that "[a]ll of the halfway house's residents must be substantially

---

**[26]** This list is not exclusive, and Appellants could provide other types of evidence demonstrating "actual disability."

impaired in a major life activity to continue residing there");
*MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 337 (6th
Cir. 2002) (holding methadone clinic's admissions policy
supported a finding that individual clients were disabled);
*Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1010 (3d
Cir. 1995) (observing that "no one would be able to meet a
nursing home's admissions requirements in the absence of
some handicapping condition necessitating nursing home
care").

Appellants provided this type of evidence to the district
court in each action. RAW provided its house rules and
requirements for living in its homes, including its drug
testing requirements, to the City. RAW requires residents to
attend a twelve-step program or a "peer recovery group,"
such as Narcotics Anonymous. Further, "RAW drug tests
the residents to ensure they are not currently using drugs,
two to three times per week, administered by the house
manager." RAW also submitted evidence in its use-permit
application that drug use is prohibited at all its properties.[27]
Finally, RAW stated in its reasonable accommodation
request that its residents are "individuals in recovery from
alcoholism and substance abuse . . . who cannot live
independently without the fear or threat of relapse into active
alcoholism and substance abuse."[28] The district court did

---

[27] RAW submitted the permit application, including its house rules,
relapse policy, and intake paperwork, as well as its reasonable
accommodation application, as exhibits in its compendium of evidence
filed with its memorandum in opposition to the City's motion for
summary judgment.

[28] This statement is corroborated by deposition testimony, taken under
oath, from RAW personnel, and by the public comments of former

not reach the City's evidentiary objections under Federal Rule of Civil Procedure 56(c). We express no view on whether RAW's proffered evidence complied with this rule.[29]

SoCal says that it houses only persons in recovery who are considered disabled under federal and state laws. SoCal proffers evidence of a zero drug and alcohol tolerance policy, says that it demands mandatory involvement in recovery programs, performs randomized drug tests, and requires residents to leave if they relapse. The district court could have relied on admissions criteria that satisfied Rule 56(c) and other relevant evidence to find, in the light most favorable to SoCal, that SoCal's residents are in recovery from alcohol or drug addiction. *See RECAP*, 294 F.3d at 47.

Courts may also consider employee testimony when determining whether a sober living facility houses people with actual disabilities. *See MX Grp.*, 293 F.3d at 331, 337. One RAW employee testified on personal knowledge that the residents stay at the sober living home "until they're about a year sober," after which they're able to "reintegrate[] back into society." RAW's owner testified in his deposition that when a resident's "mother called concerned" that her son had relapsed, the management of the sober living home "confronted him," and when "he admitted to drinking," the owner referred him to detox. He testified that most residents are referred to RAW's homes from treatment centers, where

---

residents at a City Planning Commission meeting regarding RAW's permit applications.

[29] We similarly express no view regarding whether Appellants' other proffered evidence satisfied Rule 56(c).

they had resided for 30 to 90 days (after spending one to two weeks in detox). SoCal provided evidence that none of its current residents were currently using drugs based on the personal knowledge deposition testimony of three staff members who testified that: residents move into a SoCal residence after completing a 30-, 60-, or 90-day rehab program; the average resident stays for six to eight months; residents are required to stay sober; the sobriety requirement is enforced via regular drug and alcohol testing; and if residents break their sobriety, they are immediately sent back to rehab.

Finally, the operators of sober living homes can show residents' disability with former resident testimony. At a public hearing for RAW's permit applications, a former resident of a RAW facility who was "in recovery" stated that RAW "helped [him] put [his] life back together" after he arrived there "broken," having "lost everything that had mattered to [him—] job, house, family." This statement could show that his addiction substantially limited his ability to work, maintain housing, and maintain relationships under FEHA's definition of disability. *See RECAP*, 294 F.3d at 47; Cal. Gov't Code §§ 12955.3, 12926(j), (m). The former resident also spoke about how he and his roommates "had a target on [their] backs and . . . wanted to show [this] communit[y] that [they] could be a part of it." A former SoCal resident testified that without sober living, he was certain he would relapse. It was therefore "really important for [him] to be [around] other people who [had] the same mindset or the same goals." He testified that when he was using drugs, he could not hold down a job or have a normal life, and was at constant risk of overdosing.

In both actions. the district court applied the wrong legal standard to determine whether SoCal and RAW met their

burden of demonstrating a triable issue of fact as to whether their residents were "actually disabled" under the ADA or FHA. The court unnecessarily limited its inquiry to individualized medical evidence of the disability of current residents, which Appellants chose not to provide.[30] Instead, the court ought to have considered all the relevant evidence complying with Rule 56(c) and showing that Appellants served and intended to serve individuals with actual disabilities. We therefore reverse the grant of summary judgment and remand for the district court to evaluate the evidence in accord with Rule 56(c) and to apply the appropriate legal standards.[31]

### C. "Regarded As" Disabled

"In 2008, Congress enacted the [ADAAA], which broadened the definition of disability under the [ADA]." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 430 (9th Cir. 2018). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A). After the ADA was amended, Appellants no longer needed to show that the City subjectively believed

---

[30] We do not reach whether Appellants' refusal to produce records or other information (whether as requested or redacted) was justified or appropriate.

[31] If Appellants can proceed past summary judgment, they need to prove, among other things, discrimination on the merits of their disparate treatment, disparate impact, or reasonable accommodation claims. *See Budnick v. Town of Carefree*, 518 F.3d 1109, 1114–19 (9th Cir. 2008) (providing the elements of each claim). The merits of these claims were not at issue before the district court and are not at issue on appeal.

that Appellants (or those they served) were substantially limited in a major life activity or disabled, in order to meet the "regarded as" prong of the disability definition. *See Nunies*, 908 F.3d at 434; *see also* 28 C.F.R. § 35.108(f)(1) (providing that the "regarded as" prong does not require showing that "the public entity" perceived the "actual or perceived impairment" as substantially limiting a major life activity). To establish disability under the "regarded as disabled" prong, Appellants need to show that the City perceived their "clients as being disabled and discriminated against them on that basis." *MX Grp.*, 293 F.3d at 340. The analysis turns on how an individual is perceived by others. *See* 42 U.S.C. § 12102(1)(C); 24 C.F.R. § 100.201(d); 28 C.F.R. § 35.108(f)(1). This question is fact-dependent and is adjudicated on a case-by-case basis.

Here, the district court erred by applying the pre-ADAAA standard. As Appellants and the United States argue, Appellants need not show that the City subjectively believed that all the residents (or even some specific residents) of Appellants' sober living homes were disabled. The district court's holding to the contrary is error.

Sober living homes, by the City's own definition, serve people with disabilities: "Sober living home[s]" are "group home[s] for persons who are recovering from a drug and/or alcohol addiction and *who are considered handicapped under state or federal law.*" Costa Mesa, Cal., Mun. Code § 13-6 (emphasis added). This is evidence that the district court must consider in deciding whether there is a triable issue of fact as to whether the City regarded the residents (or potential residents) of the sober living homes as disabled or handicapped, as the terms are used in the FHA and the ADA.

There is additional evidence that the district court must

also consider, if the district court finds it presented in accord with Rule 56(c). First, language in the permit denial letters and resolutions concerning whether the City regarded Appellants as serving people with disabilities in their sober living homes. For example, the Development Director's initial denial of RAW's reasonable accommodation requests stated: "I accept for purposes of your request that you are making this request on behalf of individuals who are considered disabled under state and federal law." Similarly, the Planning Commission stated that RAW "currently operates a sober living facility" at each Jeffrey Drive location and the Knox Street home. The Planning Commission was concerned that granting the permit for the Jeffrey Drive homes would have been "materially detrimental to other properties within the area," "to the health, safety and general welfare of the public," and "to the residential character of the City's neighborhoods" because "[t]he operation of a group home on contiguous parcels would result in the overconcentration of such facilities in [the] neighborhood." The City Council's resolution denying the permit for the Knox Street location found that "[t]he facility will contribute to the overconcentration of drug and alcohol treatment facilities and sober living homes in this neighborhood, which could lead to negative impacts in the neighborhood." The Planning Commission also rejected SoCal's permit applications for its Cecil, Hudson, and 21st Street residences through formal resolutions, each of which made a formal finding that the residence *was* a "sober living home" as defined by statute. To the extent this evidence is admissible, the City's recognition of Appellants' facilities as "sober living homes" seems to admit under the City's own definition that residents are "considered handicapped under state or federal law." Costa Mesa, Cal., Mun. Code § 13-6.

Further, the City cited and fined Appellants for operating sober living homes without approval. The City issued notices of violation to all three of SoCal's homes on the grounds that they were "sober living homes" operating without a permit. SoCal also received citations for violating the Ordinances. The City filed an abatement action against SoCal on the ground that it was operating a "sober living home" without a permit at the Hudson Street property. In its abatement complaint, the City repeatedly alleged that the Hudson Street residence was a "sober living group home." The City issued citations to RAW's residences for "operation of a sober living / group home without [City] approval," and sued RAW in state court to enjoin and abate "operation of an unlawful sober living group home." The state trial judge found that RAW was "operating a sober living home" or "allowing the operation of a sober living home" at its Knox Street location.**32**

On summary judgment, the district court can also consider appropriate evidence as to whether the City's actions were based on unfounded fears and stereotypes, since the "regarded as" prong concerns how people with disabilities are perceived by others. *See* 42 U.S.C. § 12102(1)(C); 24 C.F.R. § 100.201(d); 28 C.F.R. § 35.108(f)(1). Here, the City may have been influenced by the way others wrote and spoke about those with disabilities at public hearings. Congress added the "regarded as" prong because of its concern that "society's accumulated myths

---

**32** We may take judicial notice of the state court's findings in the abatement action, as a matter of public record that is not subject to reasonable dispute. *See Csutoras v. Paradise High Sch.*, 12 F.4th 960, 964 n.3 (9th Cir. 2021); *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 954 n.3 (9th Cir. 2011).

and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 50 (2d Cir. 2015) (cleaned up) (quoting *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 284 (1987)). The oral testimony given at public hearings and written statements submitted to the City by residents opposing the permit applications for Appellants' sober living homes reflect stereotypes about the homes' residents. Some described the residents of sober living homes as "capable of mayhem and violence," and as the cause of "[c]rime and homelessness." One person shared that single women are "uncomfortable" with residents of a sober living home residing so close to their homes. The City referenced some of these stereotypes in its decisions denying Appellants' permit applications. The Sixth Circuit, *see MX Grp.*, 293 F.3d at 342, and the Fourth Circuit, *see S. Mgmt. Corp.*, 955 F.2d at 919, decided that this type of public speech about sober living home residents was evidence that the government regarded the population under discussion as disabled. We agree that this type of evidence, if appropriately presented and to the extent it appears in the City Council's stated reasons for adopting the Ordinances or denying permits and reasonable accommodation requests, should be considered in the "regarded as disabled" analysis.

This type of evidence, if it can be considered under Rule 56(c), should have been examined by the district court in analyzing whether, in the light most favorable to Appellants, the City regarded Appellants' residents as disabled. We therefore reverse each district court decision and remand for the court to consider whether Appellants established a genuine dispute of material fact on this prong.

## IV. CONCLUSION

For the reasons stated above, we **REVERSE** and **REMAND** to the district court. In each action, the district court erred by finding that an individualized assessment of resident disability was necessary under the "actually disabled" prong of the disability definition, and that Appellants must prove the City's "subjective belief" that their residents were disabled under the "regarded as" prong. In the context of zoning discrimination against a home that aims to serve people with disabilities, we hold that courts must look at the evidence showing that the home serves or intends to serve individuals with actual disabilities *on a collective basis*, including the home's policies and the standards the municipality uses to evaluate the residence. Appellants provided the district court with evidence of (1) admissions criteria and house rules, (2) employee and former resident testimony, (3) public fears and stereotypes of their residents that may have influenced the City's perception, and (4) the actual content of City ordinances, denial letters, resolutions, citations, and abatement actions that acknowledged the residents in Appellants' homes were disabled. This type of evidence, if it satisfied the requirements of Rule 56(c), should have been considered by the district court in evaluating whether Appellants established triable issues of fact under either or both of the "actually disabled" or "regarded as disabled" prongs. We reverse each of the district court's grants of summary judgment and remand for the court to consider whether the record contains evidence sufficient to establish a genuine dispute of material fact on the "actually disabled" or

"regarded as disabled" prongs of the disability definition.[33]

**REVERSED AND REMANDED.**

---

[33] In light of this disposition and given the City's concession at oral argument, we also vacate and remand the awards of attorneys' fees and costs, without prejudice. *See Green v. Mercy Hous., Inc.*, 991 F.3d 1056, 1057–58 (9th Cir. 2021); *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012).